**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

RYAN O'DELL,                                     :
                                                 :
           Plaintiff,                            :    Civil Action No. 23-cv-6977
                                                 :
v.                                               :    **COMPLAINT FOR VIOLATIONS OF**
                                                 :    **SECTIONS 14(a) AND 20(a) OF THE**
AMEDISYS, INC., RICHARD ASHWORTH,                :    **SECURITIES EXCHANGE ACT OF**
VICKIE L. CAPPS, MOLLY J. COYE, MD,              :    **1934**
JULIE D. KLAPSTEIN, TERESA L. KLINE,             :
PAUL B. KUSSEROW, BRUCE D.                       :    **JURY TRIAL DEMANDED**
PERKINS, JEFFREY A. RIDEOUT, MD,                 :
IVANETTA DAVIS SAMUELS,                          :
                                                 :
           Defendants.                           :
---------------------------------------------------------  :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.       This is an action brought by Plaintiff against Amedisys, Inc. ("Amedisys or the

"Company") and the members Amedisys' board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Amedisys by affiliates of UnitedHealth Group Incorporated

("UnitedHealth").

2.       Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on July 31, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Aurora Holdings Merger Sub Inc. ("Merger Sub"), a wholly-owned subsidiary of UnitedHealth, will merge with and into Amedisys, with Amedisys surviving as a wholly-owned subsidiary of UnitedHealth (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on June 26, 2023 (the "Merger Agreement"), each Amedisys stockholder will receive $101.00 in cash (the "Merger Consideration") for each Amedisys share owned.

3.      As discussed below, Defendants have asked Amedisys' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Guggenheim Securities, LLC ("Guggenheim") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Amedisys' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of Amedisys stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Richard Ashworth has served as a member of the Board since April 2023 and President and Chief Executive Officer of the Company.

11.     Individual Defendant Vickie Capps has served as a member of the Board since 2019.

12.     Individual Defendant Molly J. Coye, MD has served as a member of the Board since 2019.

13.     Individual Defendant Julie D. Klapstein has served as a member of the Board since 2016.

14.     Individual Defendant Teresa L. Kline has served as a member of the Board since 2019.

15.     Individual Defendant Paul B. Kusserow has served as a member of the Board since 2014 and is the Chairman of the Board.

16.     Individual Defendant Bruce D. Perkins has served as a member of the Board since 2015.

17.     Individual Defendant Jeffrey A. Rideout, MD has served as a member of the Board since 2016.

18.     Individual Defendant Ivanetta Davis Samuels has served as a member of the Board since 2020.

19.     Defendant Amedisys is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 3854 American Way, Suite A, Baton Rouge, LA 70816. The Company's stock trades on the NASDAQ Global Select Market under the symbol "AMED."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

22.     Amedisys, together with its subsidiaries, provides healthcare services in the United States. It operates through four segments: Home Health, Hospice, Personal Care, and High Acuity Care. The Home Health segment offers a range of services in the homes of individuals for the recovery of patients from surgery, chronic disability, or terminal illness, as well as prevents avoidable hospital readmissions through its skilled nurses; nursing services, rehabilitation therapists specialized in physical, speech, and occupational therapy; and social workers and aides

for assisting its patients. The Hospice segment offers services that is designed to provide comfort and support for those who are dealing with a terminal illness, including cancer, heart disease, pulmonary disease, or Alzheimer's. The Personal Care segment provides assistance for patients with the activities of daily living. The High Acuity Care offers essential elements of inpatient hospital, skilled nursing facility care, and palliative care to patients in their homes. Amedisys was incorporated in 1982 and is headquartered in Baton Rouge, Louisiana.

23.     On June 26, 2023, the Company announced the Proposed Transaction:

> BATON ROUGE, La., June 26, 2023 (GLOBE NEWSWIRE) -- Amedisys (NASDAQ: AMED), a leading provider of home health, hospice and high-acuity care, and Optum, a diversified health services company, have agreed to combine. The agreement calls for the acquisition of Amedisys's outstanding common stock in an all-cash transaction for $101 per share.

> The combination of Amedisys with Optum unites two organizations dedicated to providing compassionate, value-based comprehensive care to patients and their families. The agreement is subject to Amedisys shareholder approvals, regulatory approvals and other customary closing conditions.

* * *

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Amedisys' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25.     On July 31, 2023, Amedisys filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

_Omissions and/or Material Misrepresentations Concerning Financial Projections_

26.     The Proxy Statement fails to provide material information concerning financial projections by Amedisys management and relied upon by Guggenheim in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Guggenheim with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Amedisys management provided to the Board and Guggenheim. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." _In re Netsmart Techs., Inc. S'holders Litig._, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, EBIT, NOPAT, and Free Cash Flow, but fails to provide line items used to calculate these metrics _and/or_

a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Guggenheim's Financial Analyses*

31.     With respect to Guggenheim's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for the Company; (ii) the inputs and assumptions underlying the interim growth rate 5.5% for an interim growth period in the years 2028 – 2032; (iii) the inputs and assumptions underlying the range of perpetual growth rates of Amedisys' normalized after-tax unlevered free cash flow after the interim growth period of 2.00% -- 3.00%; (iv) the inputs and assumptions underlying the discount rates ranging from 8.25% to 10.50%; and (v) the weighted cost of capital of the Company.

32.     With respect to Guggenheim's *Selected Precedent Merger and Acquisitions Transactions* analysis, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by Guggenheim for the analysis; and (ii) the basis for selecting the adjusted EBITDA multiple reference range of 11.0x to 16.0x.

33.     With respect to Guggenheim's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by Guggenheim for the analysis; and (ii) the basis for selecting the reference range of CY 2023E Adjusted EBITDA multiples of 12.0x –15.0x and CY 2024E Adjusted EBITDA multiples of 11.5x – 13.5x.

34.     With respect to Guggenheim's *Analysts Stock Price Target* analysis, the Proxy Statement fails to disclose: (i) the fifteen Wall Street equity research analysts observed; and (ii) the public market trading price targets for the shares of Amedisys common stock prepared and published by the analysts.

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Amedisys within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Amedisys, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Amedisys, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Amedisys, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 8, 2023                    **MELWANI & CHAN LLP**


By:   _/s/ Gloria Kui Melwani_
      Gloria Kui Melwani (GM5661)
      1180 Avenue of the Americas, 8th Fl.
      New York, NY 10036
      Telephone: (212) 382-4620
      Email: gloria@melwanichan.com

      _Attorneys for Plaintiff_

13